# HENRY LOCKHART, Appellant, v. H. C. LEEDS et al., Appellees.

1. MINING LANDS—SPANISH GRANT—LOCATION OF MINE.—Lands in New Mexico in 1893 embraced within the boundaries of a Mexican or Spanish grant, as claimed, and which were *sub judice* in the Court of Private Land Claims, were open to explanation and purchase under the mining laws of the United States. Lockhart v. Wills et al., 9 N. M. 344, followed.

2. EQUITY—PLEADING—DEMURRER.—A demurrer admits all facts well pleaded, but only such facts as are well pleaded.

3. ID.—Defective allegations in a bill can not be aided by a demurrer filed to it.

4. ID.—A bill for injunction can not be maintained simply as a substitute for an action of ejectment.

5. ID.—Under the prayer for general relief no relief can be obtained except such as is consistent with the specific relief prayed for, and is agreeable to the case made by the bill.

6. BILL HELD BAD ON DEMURRER.—A bill alleged a partnership agreement to prospect for minerals between complainant and P.; that P. located a claim, posted notice, but did not have the same recorded within 90 days by reason of a fraudulent agreement into which he entered with defendants; that thereafter complainant secured and filed a copy of the notice, but that defendants posted a notice, and took possession of the claim. Complainant prayed that such location be decreed void, that complainant be declared the equitable owner of the mine, and for general equitable relief. Held: That the bill was defective and that the demurrer thereto was properly sustained, among others, for the following reasons: (a) It failed to allege when the posted copy was removed or when the copy filed by complainant for record was procured by him. (b) There was no allegation in the bill showing that complainant did not have the notice in time to have filed it himself within the 90 days, or that he was prevented by defendants from so filing it, or that he relied upon P. to file it. (c) There was no allegation as to when defendants entered into possession of the mine, whether before or after the expiration of the 90 days from the time P. posted

the notice. (d) If possession was taken before the expiration of the 90 days, complainant in an action of ejectment would have been excused from perfecting his location. (e) If after the expiration of the 90 days, then ejectment would have lain on the ground that P.'s possession was complainant's possession to the extent of the latter's rights, that ejectment can be maintained by one wrongfully deprived of possession, and that, too, against a cotenant or his grantee.

7.  CLOUD UPON TITLE.—The bill can not be maintained for the purpose of declaring fraudulent and void as against complainant the alleged written agreement between P. and his co-defendants. This agreement was not upon record and therefore does not constitute a cloud upon complainant's title. It in no way prevents him from recovering in an action at law.

8.  TO QUIET TITLE.—The bill can not be sustained under section 4010 of the Compiled Laws of New Mexico relating to suits to quiet title. The bill does not show why complainant can not recover in a suit at law. The owner of an interest in an unconfirmed grant can not maintain an action in any court thereon; the question of title to an unconfirmed grant must be settled first by Congress, or the tribunal established by Congress for that purpose.

*Appeal* from the District Court of Bernalillo county, Second Judicial District. Affirmed.

Statement of facts by the court.

The appellant filed a bill in equity in this case on the twenty-sixth day of May, 1894, to which the defendants demurred and the demurrer was sustained. Thereafter he filed an amended bill, to which a demurrer was also filed and sustained, and on January 6, 1896, the appellant, filed a "second" amended bill, to which a demurrer was also filed, and was sustained by the court on the sixteenth day of August, 1899, and the case dismissed. From the action of the court in sustaining the demurrer to the second amended bill, this appeal was taken.

The second amended bill in substance alleges, that on May 7, 1893, the appellant entered into an agreement in writing with one Ben Johnson and Charles Pilkey, whereby the said Pilkey agreed with the appellant and Johnson to enter into a co-partnership for the purpose of

discovering, locating and operating mining claims; that Pilkey should prospect and locate such veins, lodes and places as he may discover or know the existence of, containing valuable ores or minerals, in the name of and for the joint benefit of the parties thereto. The appellant and Johnson were to furnish certain articles therein mentioned, 25 pounds of powder, 100 feet of fuse, 1 box caps, 1 hammer, —— pounds of drill steel, 1 pick, and when he should have sunk or driven a shaft or tunnel 4 feet by 6 feet, in the vein of mineral-bearing quartz to a depth of twenty feet from the lowest level of the surface at its mouth such vein and locality to be designated by the appellant and Johnson, he was to receive in addition, the sum of thirty dollars, less any moneys or provisions or other articles, except as above mentioned; that said work should begin within twenty days from the date of the agreement, and be prosecuted with due diligence to a completion and to the satisfaction of the said appellant and Johnson. Pilkey was to furnish the said appellant and Johnson, from time to time at their request, samples of all ores or minerals discovered or taken out of any workings. It also provided that it should be at the option of said appellant and Johnson to continue the work or abandon any claims located, at any time they might deem proper. The agreement was to continue in force for one year from its date, and all discoveries or locations made during that time by said Pilkey were to be covered by the agreement. "Any concealment of a discovery or failure to locate a valuable mineral claim for the purpose of evading the terms of this agreement and defrauding the said second parties shall work a forfeiture of any right or interest direct or indirect, that such first party might have or afterwards obtain to and for the benefit" of said appellant and Johnson. This agreement was dated May 7, 1893.

The bill alleges that the plaintiff and Johnson delivered the articles and provisions mentioned in the contract, and paid the money, and divers other sums of money

to and for the said Pilkey, and in all respects kept and per-
formed the said agreement upon their part. It further al-
leges, that under this agreement, Pilkey located a claim in
the name of himself, the appellant, and Johnson, on July
10, 1893, called it the "Sampson," and that a copy of the
location notice is filed as exhibit "B" to the bill; that he
posted that location notice on the said claim, marked the
boundaries on the ground, transmitted at the request of ap-
pellant and Johnson samples of the ore, and sunk a shaft
or cut on said claim to the depth of ten feet, showing
mineral in place within less than ninety days from the
time of taking possession of said lode. It further alleges,
that the discoverers and locators of said claim, not then
knowing whether the said mineral was situated upon the
public domain of the United States, and so free and open
to location under the mining laws of the United States,
performed the required acts of location under the said laws
and the laws of the Territory and were ready, able and
willing in all things to comply therewith, and would have
done so, except for the fraudulent and unlawful acts of the
defendants therein mentioned. The bill alleged the perform-
ance of every necessary act to constitute a valid location,
except the recording in the proper recorder's office of the
location notice. It further alleges, that on or about October
1, 1893, the defendant Pilkey, while so in possession of the
said lode, ledge or lead, under and in pursuance of said
agreement, wrongfully and fraudulently conspired with the
defendants Leeds, J. A. Johnson, Fagaley and Walker, to
defraud the appellant and the said Johnson of their interest
in and title to the said mines and minerals, discovered and
possessed by them as aforesaid, of which the said Pilkey,
as the partner and co-owner with your orator, was then in
pursuance of said conspiracy and confederation in posses-
sion, and on, to wit October first, 1893, the precise date
whereof being unknown to your orator, an agreement was
made and entered into by the defendants, Fagaley, J. A.
Johnson, Walker and Leeds, and the defendant, Pilkey, by

which it was agreed that the said Pilkey in violation and fraud of the rights of your orator in and to the said mine of which he was then in possession as aforesaid, by him dis-covered and held under said agreement, should transfer, convey and deliver possession of said mine to the last named defendant without the knowledge or consent of your orator and the said Johnson, and that they should do and perform all other acts deemed necessary for that purpose. And the bill further states, "that the said complainant (meaning Pilkey) by an instrument in writing the precise terms of which are unknown to complainant, the same being in possession of defendants or some of them, sold, transferred and conveyed to the defendants, Fagaley, J. A. Johnson, Leeds and Walker an undivided four-fifths inter-est in said mine and minerals, the said Pilkey retaining an undivided one-fifth interest therein, which was conveyed to said Walker by said instrument and by him held in secret trust for said Pilkey, and in pursuance of said fraudulent combination and conspiracy, the defendants Frank Fagaley, J. A. Johnson, Lee Walker and H. C. Leeds, together with the defendant J. Q. Wills, caused and procured the defend-ant, Pilkey, to stop work upon the said mines under his said agreement and to fail and neglect to record the said location notice, so by him posted thereon as aforesaid, and the said defendants or some of them wrongfully removed the said location notice from said claim and said defendants covered up or concealed the said workings thereon, theretofore done and performed by defendant Pilkey, and without the knowl-edge or consent of your orator and the said Johnson, entered into and upon the said lead, lode, ledge and deposit bear-ing gold and silver, and upon the said parcel or surface ground, including the same mentioned and described in said location notice, and known as the "Sampson Mine," and denied and still deny that your orator had or has any inter-est therein, and thereafter, having so procured possession of the same, the said defendants in pursuance of said con-federacy, caused to be posted upon said mine a location

notice, and filed the same for record in the recorder's office of said county," etc., a copy of which is filed and made a part of the bill, etc., and "thereby said defendants claimed to have located the said lode for the benefit of themselves as locators * * * under the mining laws of the United States, and called and designated the same as the "Washington Lode." The bill then alleges that the said defendants agreed among themselves as to the respective interest each of them should have in said location, and that the said Pilkey should be entitled to a one-fifth interest therein, but that the said last named interest should be claimed and held by said Walker in trust for him.

The bill then alleges that the ground upon which these locations were made is situated within the exterior boundaries of a tract of land claimed to have been granted in 1728, by the then Spanish authorities, to one Antonio Lucero, and that the same was, at the time of the making of said locations, claimed by certain persons under said alleged grant, and that claims were then, and at the time of the filing of said amended bill, pending in the United States Court of Private Land Claims, and undetermined; and further alleges, that neither the said Antonio Lucero, nor his heirs or successors had become entitled in law or equity to the minerals contained therein, and that by virtue of the location of the said "Sampson" claim by the said Pilkey, under the said agreement with the appellant, the appellant became and now is equitably entitled to the minerals contained therein, and had a paramount right and title in and to the same, as against the said defendants or any or either of them. It also alleges that the other defendants named in the bill claim some right or interest in and to said mining claim known as the Washington, derived through their co-defendants. It alleges that the mineral deposit so discovered by said Pilkey was not and is not subject to location as a mining claim under and in pursuance of the laws of the United States, because the same is situate within the said alleged private land grant, and that

by virtue of the said prior discovery, possession and working of the said mining claim by the said Pilkey under said agreement, the appellant became and was and is equitably entitled to the minerals contained in said location as against the said defendants, or any other persons, except the government of the United States. The bill also alleges, that the appellant, by virtue of conveyances, had acquired an undivided title and interest as tenant in common in said private land claim, superior to any title or right thereto on the part of the defendants, or either of them, and is lawfully entitled to enter upon and work the said mine.

The bill also alleges, that after the removal by the said defendants of the said location notice, posted as aforesaid by Pilkey, a copy thereof was procured by the appellant and filed and recorded in the office of the recorder of the county of Bernalillo in which the same was situate.

The bill further alleges, that the appellant, by virtue of the facts alleged in the said bill, became the equitable owner of the mineral in said claim, and had a preferential right to acquire the legal title to the same from the United States, and that the location thereof under the name of the Washington by the defendants was wholly inoperative and void, and that the said Pilkey, by reason of his participation in the said fraudulent conspiracy and combination, by virtue of the said agreement with the appellant and Ben Johnson, had forfeited all right or interest, direct or indirect, in and to the said Sampson mine, and that the said defendants claimed that the said Washington location was a valid location and denied the appellant had any interest therein, and excluded him from the possession thereof. The bill also alleged the insolvency of some of the defendants, and that the appellant would suffer irreparable injury unless the defendants were enjoined from working the same.

The bill then prays for the appointment of a receiver to take possession of the said Sampson mine, and that the said transfer and conveyance executed by said Pilkey to said Fagaley, Leeds, J. A. Johnson, and Walker be declared

fraudulent and void as against him, and that it be cancelled
and annulled; and that the location notice of the Washing-
ton lode be decreed to be void and of no effect as against
the appellant; and that the defendants be enjoined from
mining, working or removing from the said Washington
lode any ore; and that he be decreed the equitable owner
of the said ore and mineral contained therein; and also for
general relief.

To this bill the defendants filed a demurrer, among
others, upon the following grounds: That the bill did not
allege that the defendants entered upon the mining claim
within three months after the said mining claim is alleged
to have been located under the name of the "Sampson;"
that it appeared that no valid location notice was' ever
posted upon the surface of said claim or recorded in the
recorder's office, as required by law; and because the agree-
ment alleged to have been between plaintiff and Ben John-
son and defendant Pilkey, was subject to revocation by
either party thereto at any time; and that the facts alleged
in the amended bill amounted to an abandonment of said
alleged "Sampson" claim under the terms of his alleged
agreement; and because it did not appear from the allega-
tions in the bill, that at the time of the alleged entry of the
defendants on this exact mining claim, the complainant or
his co-locators, under the alleged Sampson location, were in
possession of the said mining claim or any part thereof, or
had any lawful right to the possession thereof; and because
the complainant's remedy was at law, and that the amended
bill did not state a case for a court of equity.

The assignments of error by the appellant are, that the
court erred in sustaining the demurrer of the defendants to
the plaintiff's "second" amended complaint, and ordering
the dismissal of the said case.

W. L. WARREN and FERGUSSON & GILLETT for appellant.

When Pilkey, after the expiration of the ninety days
required to perfect the Sampson location, acquired title to

the same vein and ground covered by the Sampson, along with his co-collusionists, the defendants, under the name of the Washington location, he acquired an outstanding title; and that inures to the benefit of his co-tenants under the Sampson. This general principle of law is applied to the relocation of a mining claim. Lindley on Mines, Sec. 406; Turner v. Sawyer, 150 U. S. 578-586.

The relocation of a mining claim by one occupying trust relation, as agent, trustee, is not permitted. Lindley on Mines, Sec. 407; Largey v. Barlett, 44 Pac. 962; Lockhart v. Rollins, 2 Idaho, 503-514; Utah M. etc., Co. v. Dickert et al, 6 Utah, 183; Story on Agency, 210; Cooley on Torts, 526; Gardner v. Ogden, 22 N. Y. 327; Ringo v. Binns, 10 Pet. 269; Bain v. Brown, 56 N. Y. 285; McMahon v. McGraw, 26 Wis. 614; Michoud v. Girod, 4 How. 504; Edmonstone v. Hartshorn, 19 N. Y. 9.

And it makes no difference whether such relocation is made in the agent's own name or in the name of another in privity with the agent. Largely v. Bartlett, 44 Pac. 962.

Forfeitures are odious; and the failure to comply with any given local rule or regulation will not work a forfeiture, unless the said local rule or regulation itself provides that a failure to comply with its requirements shall work a forfeiture.

The failure to record the certificate of location within ninety days from the discovery and appropriation of a vein will not work a forfeiture. Lindley on Mines, sections 219, 273, 274, 330 and 390; and cases cited to section 274.

When complainant recorded the location notice of the Sampson on December 9, 1893, though the ninety days had expired on October 10, 1893, yet if such recording was before any bona fide right had intervened, it related back and made the Sampson location valid. Lindley on Mines, Sec. 330, and cases there cited.

As the Washington location was founded on fraud and collusion, and as it was made before the Sampson location

notice was recorded, it amounts to a cloud on complainant's title, and equity has jurisdiction to declare it null and void.

If, however, the Sampson location was lost to complainant by reason of non-compliance with the legal requirements; and was so lost through the fraud and collusion of Pilkey and the locators of the Washington, then, under the allegations of this bill, Pilkey and those who colluded with him, the locators of the Washington, should be declared to hold said Washington claim as trustees for complainant. The case of Largey v. Bartlett, above cited, is squarely in point, and sustains complainant's contention in this case—especially upon the point that Pilkey's attempt to shield himself behind other names will not, in a court of equity, be allowed to defeat complainant's rights. The bill charges actual knowledge upon all the locators of the Washington.

The prayer of the bill for specific and general relief is sufficient. Under our statutes, it may be amended any time before final decree. The demurrer goes to the whole bill, that the facts stated in the bill do not give a court of equity jurisdiction. The question before this court, therefore, is, does the bill make a case for a court of equity. If it does, the demurrer should have been overruled. But the prayer may be amended after proof taken.

CHILDERS & DOBSON for appellees.

1. We have already shown that the bill does not allege that possession was taken before the ninety days allowed for perfecting a location had elapsed. Inferentially it alleges that possession was taken before. It should have clearly alleged when it was taken. "It may be affirmed as an elementary rule of the most extensive influence that the bill should state the right, title or claim of the plaintiff with accuracy and clearness, and that it should, in like manner, state the injury or grievance of which he com-

plains, and the relief which he asks of the court." Story on Equity Plead. Sec. 241.

"Uncertainty in a bill (as has been well observed) may arise in various ways. (1.) The case intended to be made by the bill may be vague and uncertain. (2.) The case intended to be made may be certain, but the allegations of the bill may be so vague and general as to draw with them the consequences and mischiefs of uncertainty in pleadings. (3) Some of the material facts may be stated with sufficient certainty, and others again with so much indistinctness or incompleteness as to their nature, extent, date, or other essential requisites (as, for example, in stating the title of the plaintiff) as to render inert, or inefficient, those with which they are connected, or upon which they depend. In each of these cases the defect may be fatal to the objects of the bill." Id. 242.

We respectfully submit that this bill was filed upon a theory of the law of mining claims within unconfirmed grants, which this court has held unsound, and the allegations have never been amended, as will be shown by a comparison with the original bill. The failure to allege when possession was taken is vital. It is upon the theory that it was taken after October 10, that appellant attempts to build up his case. There is no allegation in the bill to support it. The pleading, if ambiguous, is taken most strongly against the pleader. The allegations of fraud, or how plaintiff was injured by Pilkey's failure to record the location notice, or why he did not record it himself prior to October 10, since he did record in December, are equally fatal. Out of the many instances of fatal defects for uncertainty cited by Story, in the sections following those we have quoted from, we quote the following:

"So, where a bill was founded upon the supposed due execution of a power, and insisted, in the alternative, that it was a good execution of the power at law, or if not, that it was a good execution of the power in equity; the bill was held bad on demurrer; for the plaintiffs ought to state dis-

tinctly whether their case is at law or in equity; for if it be good at law, there may be no remedy in equity." Story on Equity Plead., Sec. 246.

The facts which determine whether the remedy is at law or equity are not distinctly alleged.

"A demurrer only admits facts well pleaded; it does not admit matters of inference and argument, however clearly stated; it does not admit, for example, the accuracy of an alleged construction of an instrument, when the instrument itself is set forth in the bill, or a copy is annexed, against a construction required by its terms; nor the correctness of the ascription of a purpose to the parties when not justified by the language used." Dillon v. Barnard, 21 Wallace, 437.

The recovery must be had on the case made by the pleadings or not at all. Grosholz v. Newman, 21 Wall. 488.

Further, on the question of certainty of allegation when possession was taken, and of fraudulent withholding of the location record, we quote: "There must be a sufficient equity apparent on the face of the bill to warrant the relief prayed for, and the material facts on which the plaintiff relies must be so distinctly alleged as to put them in issue." Harding v. Handy, 11 Wheat. 103. See also Harrison v. Nixon, 9 Peters, 483.

"No decree can be founded on matters not in issue between the parties. If the bill sets up a case of fraud, the complainant is not entitled to relief by establishing some one or more of the facts independent of fraud, although the facts might create a case under a wholly distinct head of equity." Bradley v. Converse, 4 Cliff 366.

"The rule is familiar that the court will refuse to decree unless the substantial ground work of the case on which relief is sought is distinctly alleged in the bill." The case holds that the objection is by demurrer. Pelham v. Edelmeyer, 15 Fed. 262. See also Foster v. Goddard, 1 Black. 506; Socola v. Grant, 15 Fed. Rep. 487; Eyre v. Potter, 15 How. 42; Kohler v. Hubbey, 2 Black, 715.

"It is not permissible for a complainant to unite in his

bill two inconsistent causes for equitable relief. An action to set aside a transfer as fraudulent, in which the court is asked to adjudge the defendant's title to the vessel void, and one where the transfer is alleged to be valid and the complainant claims relief on the theory of a subsisting joint interest with the defendant by reason of the transfer, proceed on entirely different grounds, and are utterly repugnant to each other. Both theories cannot be true on any hypothesis of fact, or by any fiction of law." Wilkinson v. Dobbie, 12 Blatch. 298; 29 Fed. Cases, No. 17,670.

This is exactly in point. Plaintiff has proceeded upon the theory that the locations were both made when no legal locations could be made, that plaintiff's possession was intruded upon by collusion, and agreement prior to the 10th of October, 1893, and that his rights being equitable he had a right to maintain this suit. The court held that on this state of facts, if true, his prior possession would sustain an action at law. That the relief he asked was not equitable. The specific relief he asked was that the Washington location be declared void and for possession. Now he maintains that the location of the Washington be held void, and that the holders of the title be held as constructive trustees, under the prayer for general relief. We respectfully submit that the allegations in the bill for this purpose are absolutely uncertain and do not warrant any such relief. That under the authorities quoted in appellant's brief the Washington location must be held valid, and that he has not even attempted to state or stated a case, which would entitle him to reach the alleged interest of Pilkey in the Washington. As to what particularity is necessary in allegations of fraud, see U. S. v. Atherton, 102 U. S. 372; Ambler v. Choteau, 107 U. S. 589; Voorhees v. Bowstick and wife, 16 Wall. 16.

"Whether the fraud be alleged in the declaration, complaint or bill, or set up by way of defense in the plea, answer or replication, it is essential that the facts and circumstances, which constitute it, should be set out clearly, concisely and with sufficient particularity to apprise the op-

posite party of what he is called upon to answer." 9 Ency. of Plead. & Prac. 687, and many authorities cited.

"Charging, generally, that what was done was 'colorable,' a 'fraud,' 'a breach of trust' and a 'scheme,' these are allegations of legal conclusion merely which a demurrer does not admit." Fogg v. Blair, 139 U. S. 127. See also St. Louis Ry. Co. v. Johnston, 127 U. S. 577.

"Mere words, in and of themselves, and even as qualifying adjectives of more specific charges, are not sufficient ground of equity jurisdiction, unless the transactions to which they refer are such as in their essential nature constitute a fraud, or a breach of trust, for which a court of chancery can give relief." Van Weel v. Winston, 115 U. S. 237. See also Brooks v. O'Hara, 7 Fed. Rep. 532; Phelps v. Elliot, 35 Fed. Rep. 455.

"Manifestly, in equity pleadings, general accusations of fraud and collusion are ineffective. 1 Daniell, Ch. Pr. (5th Ed.) 324, and notes; Riley v. Lyons, 11 Heisk, 251; Whitthorne v. St. Louis M. I. Co., 3 Tenn. Ch. 147. The pleader should state the facts and not formulate mere epithetic 'charges.' And it has been recently decided that the same rule applies at law. Hazard v. Griswold, 21 Fed. Rep. 178. If the facts are not to be ascertained by diligence, because of some obstruction, or if the evidence of them is in possession of the other side, this should be made to appear, with technical averments showing the necessity for discovery, where that is wanted; but a court cannot sustain a bill upon mere denunciatory statements of the plaintiff's suspicions or belief. The best pleadings are those which state the inculpatory facts that carry with them their own conviction of the fraud, and by which the wrongdoing appears, without much necessity for characterizing it as such." Lafayette Co. v. Neely, 21 Fed. Rep. 744.

The only allegation of fact in the bill, is that Pilkey gave up an undivided third interest standing in his own name in the "Sampson" and accepted an undivided fifth in the "Washington," as an inducement to withhold from

record the "Sampson" location, and to surrender possession to the locators of the "Washington," but when this was done is left without allegation, inferentially before the 10th of October. We submit that there are no allegations in the bill justifying the court in granting the relief specifically prayed for in the bill, and that the demurrer was properly sustained.

The first ground of demurrer quoted in appellant's brief, is based upon the proposition that the land was subject to entry under the mining laws, and if the Washington location was made after the ninety days had elapsed, it was valid location and could not be declared void as prayed for in the bill, and this is true. If possession was taken before the ninety days had elapsed, that possession was unlawful, and the remedy is in law. We will further consider these propositions hereafter.

2. The plaintiff is now contending that the defendants can be required to hold as constructive trustees. The bill was filed for no such purposes, and there are no allegations in the bill on which such relief can be predicated under the authorities already cited.

Under the prayer for general relief, only such relief as is agreeable to the case made by the bill can be granted. English v. Foxall, 2 Peters, 612; Hobson v. McArthur's Heirs, 16 Peters, 182; Boon v. Chiles, 10 Peters, 177.

"Now, it is perfectly clear, according to the practice of the court, where a specific relief is prayed for, even though there be a prayer for general relief, the court cannot grant a relief which is inconsistent with, or entirely different from that which is asked for." Wilson v. Graham, 4 Wash. C. C. 53; 30 Fed. Cases, No. 17,804.

"It is true that there was prayer for general relief, but relief given under the general prayer must be agreeable to the case made by the bill." Allen v. Pullman Palace Car Co., 139 U. S. 662; Hayward v. National Bank, and authorities cited, 96 U. S. 614; Georgia v. Stanton, 6 Wall. 77.

"In order to entitle a plaintiff to a decree under the

general prayer, different from that specifically prayed, the allegations relied upon must not only be such as afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed, otherwise the court would take the defendant by surprise, which is contrary to its principles." 1 Daniels Ch. Pr. 386. Quoted and applied in Curry v. Lloyd, 22 Fed. Rep. 264, which see specially.

"But, even when a prayer of general relief is sufficient, the special relief prayed at the bar must essentially depend upon the proper frame and structure of the bill; for the court will grant such relief only as the case stated will justify; and will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another, especially if the defendant may be surprised or prejudiced thereby." Story Eq. Plead., Sec. 42. See also 3 Ency. of Pl. & Pr., 350, et seq., and notes.

In view of these authorities the conclusion seems inevitable that the frame and structure of this bill was not intended to secure the holding of anybody as constructive trustee under the "Washington" location. It did seek to forfeit Pilkey's interest in the "Sampson." The relief now sought is wholly inconsistent and in conflict with that for which the bill was framed and the prayers for the specific relief.

3. We will now consider the special prayers: First, that the said instrument of writing and conveyance executed by the said Pilkey to his co-defendants be declared fraudulent and void as against plaintiff, and that it be cancelled and annulled. As we have shown, this imaginary instrument was, as alleged, executed on or about October first, and provided that Pilkey should secretly "transfer, convey and deliver possession of said mine, 'The Sampson,' and sold, transferred and conveyed to the defendants Fagaley, J. A. Johnson, Leeds and Walker an undivided four-

fifths interest therein." These allegations relate to the "Sampson," not the "Washington," as an inspection of the bill clearly shows. This contract was not recorded. No authority can be found for the cancellation or annulling of such an instrument. Pilkey had a right to convey a one-third interest in the "Sampson"—a conveyance of any greater interest under the allegations of the bill, while the "Sampson" location was in force, was simply void. It did not constitute a cloud on the title of his co-tenants. Hartford, etc., Ore Co. v. Miller, 3 Mor. Min. Rep. 353.

"The rule applicable to this class of cases is that equity will interpose only when the pretended title which it is alleged constitutes a cloud, or the proceeding which it is apprehended will create one, is apparently valid on its face." 6 Am. & Eng. Enc. of Law (2 Ed.) 153.

In Whitehead v. Shattuck, 138 U. S. 146, it is said: "The facts set forth in the bill of the plaintiff clearly show that he has a plain, adequate and complete remedy at law for the injuries of which he complains. He alleges that he is the owner in fee, as trustee, of certain described lands in Iowa, and his injuries consist in this: That the defendants are in the possession and enjoyment of the property, claiming title under certain documents purporting to transfer the same, which are fraudulent and void. If he is the owner in fee of the premises, he can establish that fact in an action at law; and if the evidences of the defendants' asserted title are fraudulent and void, that fact he can also show. There is no occasion for resort to a court of equity, either to establish his right to the land or to put him in possession thereof." Whitehead v. Shattuck, 138 U. S. 150.

Appellant contended in the court below that he had a right to this relief under section 4010 of the Compiled Laws of New Mexico (1897), which authorizes the bringing of a suit to quiet title by one out of possession, as well as by one in possession. We respectfully submit that the Legislature had no power to authorize one out of possession

to bring such a suit. Under such a statute, passed by a state, this suit could not be maintained.

"It is probable that the only effect of this statute was to enable owners of land not in possession to file a bill for the removal of clouds upon their title; since the ordinary jurisdiction of a court of chancery is sufficient to enable owners in possession to file such a bill. The questions, what constitutes such a cloud upon the title, and what character of title the complainant himself must have, in order to authorize a court of equity to assume jurisdiction of the case, are to be decided upon principles which have long been established in these courts. Prominent amongst these are, first, that the title or right of the complainant must be clear; and, secondly, that the pretended title or right which is alleged to be a cloud upon it, must not only be clearly invalid or inequitable, but must be such as may, either at the present or at a future time, embarrass the real owner in controverting it. For it is held that, where the complainant himself has no title, or a doubtful title, he cannot have this relief. 'Those only,' said Mr. Justice Grier, 'who have a clear legal and equitable title to land connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title.' Orton v. Smith, 18 How. 263; and see Ward v. Chamberlain, 2 Black, 430, 444; West v. Schnebly, 54 Ill. 523; Huntington v. Allen, 44 Miss. 654; Stark v. Starrs, 6 Wall. 402. And as to the defendant's title, if its validity is merely doubtful, it is more than a cloud, and he is entitled to have it tried by an action at law; and if it is invalid on its face, so that it can never be successfully maintained, it does not amount to a cloud, but may always be repelled by an action at law. Overing v. Foote, 43 N. Y. 290; Meloy v. Dougherty, 16 Wis. 269. Justice Story says: 'Where the illegality of the agreement, deed or other instrument appears upon the face of it, so that its nullity can admit of no doubt, the same reason for the interference of courts of equity, to direct it to be cancelled or delivered up, would not

seem to apply; for in such a case, there can be no danger that the lapse of time may deprive the party of his full means of defense; nor can it, in a just sense, be said that such a paper can throw a cloud over his right or title, or diminish its security; nor is it capable of being used as a means of vexatious litigation, or serious injury.' 2 Eq. Jur., Sec. 700a." Phelps v. Harris, 101 U. S. 374-5.

To the same effect is Frost v. Spitley, 121 U. S. 557, where all the decisions of the Supreme Court are quoted and reviewed. Reviewing a case under the Nebraska statute, it says:

"By reason of that statute, a bill in equity to quiet title may be maintained in the circuit court of the United States for the district of Nebraska by a person not in possession, if the controversy is one in which a court of equity alone can afford the relief prayed for. Holland vs. Challen, 110 U. S. 15, 25. The requisite of the plaintiff's possession is thus dispensed with, but not the other rules which govern the jurisdiction of courts of equity over such bills. Under that statute, as under the general jurisdiction in equity, it is 'the title,' that is to say, the legal title, to real estate, that is to be quieted against claims of adverse estates or interests. In State v. Sioux City & Pacific Railroad, the Supreme Court of Nebraska said: 'Whatever the rule may be as to a party in actual possession, it is clear that a party not in possession must possess the legal title, in order to maintain the action.' 7 Nebraska, 357, 376. And in Holland v. Challen, above cited, this court said: 'Undoubtedly as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises.'" Forst v. Spitely, 121 U. S. 557.

The allegation that plaintiff was a co-tenant in the Cochiti grant was wholy immaterial. The grant stood unconfirmed by the Surveyor General, and pending in the Court of Private Land Claims. The Supreme Court says: "The Surveyor General's report is no evidence of title or right to possession." Pinkerton v. Ledoux, 129 U. S. 351;

Lockhart v. Wills, 54 Pacific 335, and cases cited, especially Astiazaran v. Santa Rita Mining Co., 148 U. S. 80.

The latter case holds that claim of interest in an unconfirmed grant cannot be made the basis of a suit to quiet title. If it is contended that this was a conveyance of the "Washington," then it did not fall in plaintiff's alleged chain of title, and will not constitute a cloud upon the title. It must purport to convey from the original source of title. 6 Am. & Eng. Enc. of Law, 166 (2nd Ed.); Pivley v. Huggins, 15 Cal. 128; Van Wyck v. Knevals, 106 U. S. 370, and other cases cited in Encyclopedia of Law, notes 5 and 6.

4. The Legislature had no power to dispense with possession as a prerequisite to maintain such suits. The constitution of the United States guaranteed the right of trial by jury in such cases, as under the common law, as enforced at the time of the adoption of the constitution, the parties had a right to such trial. We quote further from Whitehead v. Shattuck, 138 U. S. 151:

"The sixteenth section of the Judiciary Act of 1789, 1 Stat., 82, C. 20, declared 'that suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law,' and this provision has been carried into the Revised Statutes, in section 723. The provision is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedies, but only expressive of the law which has governed proceedings in equity ever since their adoption in the courts of England. The term 'speedy,' as used in the demurrer, is embraced in the term 'complete' in the statute.

"The Seventh amendment of the Constitution of the United States declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' That provision would be defeated if an action at law could be tried by a court of equity, as in the latter court a jury can only be summoned at its discretion, to ascertain special facts for its

enlightenment. Lewis v. Cocks, 23 Wall. 466, 470; Killian v. Ebbinghaus, 110 U. S. 568, 573; Buzard v. Houston, 119 U. S. 347, 351. And so it has been held by this court 'that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law. because the defendant has a constitutional right to a trial by jury.' Hipp v. Babin, 19 How. 271, 278.

"It would be difficult and perhaps impossible to state any general rule which would determine in all cases, what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said, that, where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury. Whitehead v. Shattuck, 18 U. S. 150-151.

"The case then goes on to review the case of Holland v. Challen, 110 U. S. 15, and other cases, and shows that the court only held that under the statutes dispensing with possession in the plaintiff, the court could take jurisdiction where neither party is in possession. It quotes from Holland v. Challen: 'Should suit be brought in the Federal Court under the Nebraska statute, against a party in possession there would be force in the objection that a legal controversy was withdrawn from a court of law, but that is not this case, nor is it of such cases we are speaking.' It is thus seen that the very case that is now before us is excepted from the operation of the ruling in Holland v. Chal-

len, or at least was designedly left open for consideration whenever similar relief was sought, where the defendant was in possession of the property." Whitehead v. Shattuck, 138 U. S. 156.

The constitution is absolutely binding upon the territories by statute. We respectfully submit that Ely v. N. M. & A. R. R. Co., 129 U. S. 291, is not in conflict with this contention. If it was it was an earlier case than Whitehead v. Shattuck.

5. The authorities we have quoted under the last two headings fully dispose of the special prayers in the bill that the Washington location be declared void, and that plaintiff be declared the equitable owner of the ore and mineral in said lode.

The prayer that the defendants be enjoined from working the lode, and the plaintiff be declared the equitable owner, is nothing but a prayer to eject defendants and give the claim to the plaintiff.

"To give a court of equity jurisdiction, the nature of the relief asked must be equitable, even when the suit is based on an equitable title. The plaintiff does not allege that the defendants, who are in possession of the premises, have the legal title, or that they obtained possession under any person who had it. Nor does she state any facts which connect them with her equity. They being mere naked trespassers, in possession, she prays that they may be turned out of, and she, who has only an equitable title, may be put in possession. The relief prayed for is such as a court of law is competent to grant, if the plaintiff's title would justify it. But the plaintiff does not seek by her bill to better her title. If all the relief asked for were granted, she would still have an equitable title only. The case is, therefore, an ejectment bill brought on an equitable title. In these respects it is similar to the bill in the case of Galt v. Galloway, 4 Pet. 332." * * * *

"This decision is in point, and shows the bill to be without equity as to those of the defendants who are in posses-

sion. Their possession is good against all the world except the true owner. As the bill asserts no equity against them, they have the right to stand on their possession until compelled to yield to the true title, and to demand a trial by jury of the question whether the plaintiff has the true title. The plaintiff cannot deprive them of the right by neglecting to acquire the legal title, and upon the ground of her equitable title ask the aid of a court of equity. She can turn the defendants out of possession only upon the strength of the legal title, which she must first acquire. Having done this, a court of law is the proper forum in which to bring her suit. Hipp v. Babin, 19 How. 271; Parker v. Winnipisogee Manufacturing Co., 2 Black 545; Grand Chute v. Winegar, 15 Wall. 373; Lewis v. Cocks, 23 Wall. 466; Killian v. Ebbinghaus, 110 U. S. 568." Fussel v. Gregg, 113 U. S. 554-555. See also the cases last cited above. Hipp v. Babin, 19 How. 271; Parker v. Man'f'g. Co., 2 Black 545; Grand Chute v. Winegar, 15 Wall. 373; Lewis v. Cocks, 23 Wal. 466; Killian v. Ebbinghaus, 110 U. S. 568.

6. Prior possession by Pilkey, and surrender of that possession, as alleged in the bill, would, if proven, make a case for recovery in a suit at law. But if the plaintiff had actual prior possession of the land, this is strong enough to enable him to recover it from mere trespassers who entered without any title. Cristy v. Scott, 14 How. 180.

"This principle is so well settled, in the law of ejectment and quare clausem fregit, as to need no citation of authorities. It will be found laid down by Mr. Greenleaf in 2 Green. Ev., Sec. 311, that either actual possession of the premises, or receipt of rent is prima facie evidence of title in fee. See also Secs. 618, 618 (a)." Burt v. Punjaub, 99 U. S. 180.

In the same volume the court repeats the statement just quoted, and adds:

"If this be the law, when the right of recovery depends on the strict legal title in the plaintiff, how much more appropirate is it as evidence of the superior right of posses-

sion, under the Act of Congress which respect such possession among miners." Campbell v. Rankin, 99 U. S. 262.

7. Pilkey and plaintiff, under the allegations of the bill, were tenants in common, and Pilkey's possession was plaintiff's until he was ousted. If Pilkey sold his interest in the "Sampson location" to his co-defendants, they became co-tenants with the plaintiff, and if they were in possession, that possession was plaintiff's, too, until they openly repudiated it, and commenced to hold adversely. This is also true as to Pilkey. Upon proof of the Sampson location, and the sale of an interest in it by Pilkey, and the entrance of the defendants into possession and the exclusion of the plaintiffs, a prima facie case would have been made out in favor of the plaintiff. The Supreme Court of the United States, in such case, says:

"Claiming, as both parties did, under Payne and Cook, the regularity of the location of the mining claims are not in question, and when in 1862 the plaintiff purchased from one of the owners of the claim an undivided interest therein, and went into possession with his grantors and with others deriving title from the original locators * * * * he became a tenant in common with those who were then the owners. He was such when the Union Gold and Silver Mining Company purchased the interest of other owners. By that purchase, that Company succeeded to a tenancy in common with him and so did the defendant, when it became the purchaser. * * * * The possession of his co-tenants was his possession. They held it for him until he was ousted. That this is a settled rule of law is not denied." Mining Co. v. Taylor, 100 U. S. 40.

It is immaterial that Pilkey conveyed more interest than he had. The deed was effectual to convey his third. The same principles are laid down in Freeman on Cotenancy and Partition, sections 166 and 167.

"The action of ejectment is an appropriate remedy whenever either of the co-tenants has been ousted by the

other from the lands of the co-tenancy, or any part thereof."
Freeman on Coten. and Part., Sec. 290.

There is no act done by Pilkey, alleged in the bill, except the surrender of the possession to his co-defendants, and, as we have shown, it does not appear whether this was done before October 10 or not. It matters not when it was done, if it was a surrender of possession by Pilkey, plaintiff's possession was good up to that time. If before, then the defendants intruded upon plaintiff's property and held it adversely and plaintiff was excused from completing the location as against the defendants, in a suit at law as well as in equity. Such intrusion, whether with the consent of Pilkey or without it, was wrongful. In such a case, the Supreme Court of the United States has said:

"They would not be deprived of the inchoate rights by the tortious acts of others; nor could the intruders and trespassers initiate any rights which would defeat those of the prior discoverers." Erhardt v. Boaro, 113 U. S. 534.

This was a suit at law.

"A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done." Belk v. Meagher, 104 U. S. 284.

"The record shows actual possession in the appellees, which is prima facie evidence of title, and as we said in Lebanon M. Co. v. Con. Rep. M. Co., 6 Colo. 380, 'entering upon premises in the actual possession of another for the purpose of performing the acts necessary to constitute location and possession, amounts only to a trespass, and cannot form the basis for the acquisition of a title.'" Weise v. Barker, 7 Colo. 178; 2 Pac. 921; Morton v. Solambo, 26 Cal. 597.

8. If defendants did not enter into possession until after the 10th of October, and Pilkey was still in actual

possession, the entry was nevertheless tortious, and the foregoing authorities would apply. If a peaceable entry was made, on the ground of its being unoccupied, vacant ground, by reason of the fact that the location made by Pilkey on July 10th had not been perfected by filing the location notice, then the ground was subject to location, and the Washington location was valid. This would be true, for whatever reason the failure to file the Sampson notice may be attributable. It is upon this assumption that the appellant now claims that the defendants should be held as constructive trustees. We have already shown, we think, that the bill will not justify such relief.

PARKER, J.  1.  The question to be determined is whether the appellant has by his bill stated a case which entitles him to any relief in a court of equity. A suit in ejectment involving the same mining claim, which is the subject of this litigation, was before this court, and the opinion deciding it will be found reported under the title of Lockhart v. Wills, 54 Pac. Rep. 336. The appellees contend that upon the allegations of the bill, the remedy of the appellant is at law, and not in equity. We think this contention is well founded, and that the action of the court in sustaining the demurrer was correct. In the case of Lockhart v. Wills, supra, we held that the ground in controversy was subject to location under the mining laws of the United States. In that case it was stipulated by the parties that the decree of the Court of Private Land Claims, confirming the private land claim within which it was alleged the ground in controversy was located, eliminated the mine from the grant. We held, however, that although that decree had not been rendered at the time the attempted locations of the "Sampson" and "Washington" mines were made, nevertheless, the ground was subject to exploration, location and entry under the mining laws of the United States. After fully discussing the contention of the parties and the law applicable to the facts, we said: "We conclude that they" (lands within unconfirmed Mexican or Spanish grants) "are not reserved lands and are 'lands belonging to the United

*Margin note: MINING lands: Spanish grant: location of mines.*

States' within the meaning of section 2319 of the Revised
Statutes of the United States." We deem it unnecessary
to again discuss this question and refer to our opinion in
that case.

The demurrer admits the truth of all the allegations
in the bill which are well pleaded. If any of the allegations
in the bill, however, are ambiguous, they are to be con-
strued more strongly against the appellant. "A demurrer
only admits facts well pleaded: it does not admit matters
of inference and argument, however clearly
stated." Dillon v. Barnard, 21 Wall. 430.
EQUITY: plead- There must be sufficient equity on the facts
ing: demurrer. of the bill to warrant the relief prayed for,
and the material facts on which the plaintiff
relies must be so distinctly alleged as to put
them in issue. Harding v. Handy, 11 Wheat. 103. "The
rule is familiar that the court will refuse to decree unless
the substantial ground work of the case on which the re-
lief is sought is distinctly alleged in the bill." Pelham v.
Edlmyer, 15 Fed. Rep. 262. "It may be affirmed as an ele-
mentary rule of the most extensive influence, that the bill
should state the right, title or claim of the plaintiff with
accuracy, and clearness, and that it should in like manner,
state the injury or grievance of which he complains, and
the relief which he asks of the court:" Story on Equity
Plead., Sec. 241. Applying these principles to the allega-
tions of the bill, we find that the bill alleges that the defend-
ant Pilkey under the contract between him and the appel-
lant and Ben Johnson, located the "Sampson Mine," and per-
formed all the acts necessary to complete a valid location,
except the filing of the location notice in the county re-
corder's office within ninety days after the making of the
location, on July 10, 1893. It alleges that the defendants
caused and procured the defendant Pilkey "to fail and neg-
lect to record the said location notice so by him posted
thereon as aforesaid, and the said defendants or some of
them wrongfully removed the said location notice from said
claim, and after the removal of the said location notice *
* * a copy thereof was procured by your orator * * *

and the same was filed in the office of the recorder on
December 9, 1893." It fails to allege when the posted copy
was removed, or when the copy filed for record was pro-
cured by the appellant. So far as the allegations of the bill
are concerned, the copy may have been in possession of the
appellant long before the expiration of the ninety days
within which the law required it to be filed. It was certainly
within the power of the defendant to have definitely alleged
when he procured this copy, and thereby show, if such
was the fact, that he did not file it sooner because he could
not obtain it. He does not allege how or from whom he
obtained it.

The failure to file a location notice for record works a
forfeiture of a mining location, and leaves the claim open
to relocation. Lockhart v. Wills, supra. There is no allega-
tion in the bill showing that the appellant could not him-
self have filed this location notice for record within the
ninety days. It contains no allegation that appellant relied
upon the defendant Pilkey to file it. It is true that there is
an allegation that the defendants caused and procured the
defendant Pilkey to fail and neglect to record it, but this
in the absence of an allegation that the appellant was rely-
ing upon the defendant to file it, does not account for the
delay in doing so until December 9, following. The bill al-
leges "that on or about the first of October, 1893, the precise
date thereof being unknown" to appellant, "an agreement was
made and entered into by some of the defendants with
Pilkey who was then in possession of the mine, that he
should transfer and deliver possession of the said mine to
the last named defendant without the knowledge or consent
of the defendant and Ben Johnson and by an instrument in
writing, the precise terms of which he can not set up, be-
cause it is in possession of the defendants, Pilkey conveyed
an undivided four-fifths interest in said Sampson mine to the
defendants, retaining one-fifth conveyed to defendant
Walker to be held in secret trust by Walker for said Pilkey,
and that in pursuance of said agreement they procured the
defendant Pilkey to withhold said location notice from
record." This allegation does not, however, excuse the

absence of the allegations in the bill as to delay in filing the notice already pointed out.

The bill alleges that the defendants entered into the possession of the mine under this agreement, but it does not allege when the defendants so entered into possession of said mine. This is an important allegation. Appellant's counsel insists that possession was so taken after the expiration of the 10th day of October, within ninety days from the location of the "Sampson." There is no allegation in the bill upon which to base this contention. Counsel appeals to the first ground stated in defendant's demurrer as establishing this fact. We do not know of any principle of pleading by which defective allegations in a bill can be aided by a demurrer filed to it.

2. Under the allegations of the bill, if the defendants, by collusion with Pilkey or otherwise, intruded upon the possession of the appellant, which the bill alleges was actually held by Pilkey under the terms of the contract, up to the time of the actual entry and exclusion of the appellant and his co-tenant, Johnson, by the defendants, the appellant could recover possession in an action at law. This action could be sustained both against Pilkey and the defendants entering under him. If Pilkey made the agreement alleged in the bill, the defendants became co-tenants with the appellant. Pilkey could by the conveyance alleged in the bill only convey his undivided third interest, and eject-ment lies against a co-tenant, or a grantee of a co-tenant at-tempting to hold adversely to his co-tenants. Prior posses-sion under such circumstances is sufficient to maintain eject-ment. Freeman on Co-tenancy and Part., Sec. 290; Cristy v. Scott, 14 How. 282; Burt v. Punjaub, 99 U. S. 180; Camp-bell v. Rankin, 99 U. S. 261. In a similar case it is said: "Claiming, as both parties did, under Payne and Cook, the regularity of the location of the mining claims, are not in question, and when in 1862 the plaintiff purchased from one of the owners of the claim an undivided interest therein, and went into possession with his grantor and with others deriving title from the original locators  *  *  *  he became a tenant in common with those who were then the owners.

He was such when the Union Gold and Silver Mining Company purchased the interest of other owners. By that purchase, that company succeeded to a tenancy in common with him and so did the defendant, when it became the purchaser. * * * The possession of his co-tenants was his possession. They held it for him until he was ousted. That this is a settled rule of law is not denied." Mining Co. v. Taylor, 100 U. S. 40. The only acts alleged in the bill as having been done by Pilkey which deprived the appellant of his rights are the surrender of the possession and the failure to record the location notice.

3. If Pilkey surrendered the possession prior to the tenth day of October, 1893, the appellant would, in an action of ejectment, be excused from perfecting his location. In such a case the Supreme Court of the United States has said: "They could not be deprived of their inchoate rights by the tortious acts of others; nor could the intruders and trespassers initiate any rights which would defeat those of the prior discoverers." Erhardt v. Boaro, 113 U. S. 534. "A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done." Belk v. Meagher, 104 U. S. 284. "The record shows actual possession in the appellees, which is prima facie evidence of title, and as we said in Lebanon M. Co. v. Con. Rep. M. Co., 6 Colo. 380, 'entering upon premises in the actual possession of another for the purpose of performing the acts necessary to constitute location and possession, amounts only to a trespass, and cannot form the basis for the acquisition of a title.'" Weise v. Barker, 7 Colo. 178, 2 Pac. Rep. 921.

We think it clear that under the allegations of the bill the appellant could obtain the relief actually prayed for in an action at law. Neither the alleged contract of Pilkey with the defendants, nor any other fact alleged would prevent him from obtaining a plain, speedy and adequate remedy by a suit in ejectment.

4.  The allegations do not show such a state of facts as would justify the granting of an injunction or the appointment of a receiver.  This relief could only be had, provided the bill contained proper allegations, and was filed in aid of a suit at law.  Fussell v. Gregg, 113 U. S. 554-5; Hipp v. Babin, 19 How. 271; Parker v. Manfg. Co., 2 Black, 545; Grand Chute v. Winegar, 15 Wal. 373; Lewis v. Cocks, 23 Wal. 466; Killian v. Ebbinghaus, 110 U. S. 568.  A bill for injunction can not be maintained simply as a substitute for an action of ejectment.

5.  The bill prays that the Washington location be declared void and for possession.  The appellant now asks under the prayer for general relief that the Washington location be held valid, and the holders thereof be held as constructive trustees.  The allegations in the bill do not justify any such relief.  It is essential that the facts and circumstances which constitute the fraud complained of should be set out clearly, concisely and with sufficient precision to apprise the opposite party of what he is called upon to answer.  9 English Enc. of Plead. & Pr., 687 and many authorities there cited.  Charging generally that what was done was "colorable fraud," "a breach of trust" and a "scheme" themselves are allegations of legal conclusion which a demurrer does not admit.  Fogg. v. Blair, 139 U. S. 127; Van Weel v. Winston, 115 U. S. 237; Brooks v. O'Hara, 8 Fed. Rep. 532; Phelps v. Elliott, 35 Fed. Rep. 453, 455; Lafayette Co. v. Neely, 21 Fed. Rep. 744.  For the purpose of sustaining this contention, the appellant now insists that the intrusion of the defendants upon the possession of appellant took place after the tenth day of October.  As already shown, if it took place before that date it would be tortious and the rights of the appellant would not be thereby affected.  The bill is fatally defective for not alleging conclusively whether it took place before or after that date.  In the prayer for general relief, only such relief as is agreeable to the case made by the bill can be granted.  English v. Foxall, 2 Peters, 612; Hobson v. McArthur's heirs, 16 Peters, 182; Boon v. Childs,

*Bill held bad on demurrer.*

10 Peters, 177. "Now it is perfectly clear, according to the practice of the court, where a specific relief is prayed for, even though there be a prayer for general relief, the court cannot grant relief which is inconsistent with, or entirely different from that which is asked for." Wilson v. Graham, 4 Wash. C. C. 53; 30 Fed. Cases, No. 17,804. "It is true that there was a prayer for general relief, but relief given under the general prayer must be agreeable to the case made by the bill." Allen v. Pullman Palace Car Co., 139 U. S. 662; Hayward v. National Bank, and authorities cited, 96 U. S. 614; Georgia v. Stanton, 6 Wall. 77. "In order to entitle a plaintiff to a decree under the general prayer, different from that specifically prayed, the allegations relied upon must not only be such as afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim for relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed, otherwise the court would take the defendant by surprise, which is contrary to its principles." 1 Daniel's Ch. Pr. 386; Curry v. Lloyds, 22 Fed. Rep. 264. "But, even, when a prayer for general relief is sufficient, the special relief prayed at the bar must essentially depend upon the proper frame and structure of the bill; for the court will grant such relief only, as the case stated will justify; and will not ordinarily be so indulgent, as to permit a bill framed for one purpose to answer another, especially if the defendant may be surprised or prejudiced thereby." Story Eq. Plead. Sec: 42; 3 Ency. Pl. & Prac. 350, et seq., and notes. The allegations contained in the bill are not adapted to the relief now urged by counsel for appellant in his brief. The bill was not framed to secure the holding of Pilkey or any other defendant as a trustee under the Washington location.

6. The bill prays that the instrument of writing alleged to have been executed by the defendant, Pilkey, conveying to his co-defendants interests in the "Sampson" location, be declared fraudulent and void as against the plaintiff, and that it be cancelled and annulled. This agreement was not upon record, and is not a cloud upon the title of the plaintiff. It in no way prevents him from re-

CLOUD upon title.

covering possession in an action at law. It could convey as against the appellant, only the interest which the defendant, Pilkey, had in the Sampson. Hartford, etc., Ore Co. v. Miller, 3 Mor. Min. Rep. 353. "The facts set forth in the bill of the plaintiff clearly show that he has a plain, adequate and complete remedy at law for the injuries of which he complains. He alleges that he is the owner in fee, as trustee, of certain described lands in Iowa, and his injuries consist in this: That the defendants are in the possession and enjoyment of the property claiming title under certain documents purporting to transfer the same, which are fraudulent and void. If he is the owner in fee of the premises, he can establish that fact in an action at law, and if the evidences of the defendant's asserted title are fraudulent and void, that he can also show. There is no occasion for resort to a court of equity, either to establish his right to the land or to put him in possession thereof." Whitehead v. Shattuck, 138 U. S. 150.

7. It is also contended that this bill can be sustained under section 4010, of the Compiled Laws of New Mexico, relating to suits to quiet title. We do not think that the allegations contained in the bill bring To quiet title. appellant's case within the provisions of this statute. They do not show why he can not recover in a suit at law. Neither does the allegation of ownership of an interest in an unconfirmed grant entitle the appellant to such relief. Pinkerton v. Ledoux, 129 U. S. 351; Astiazaran v. Santa Rita Mng. Co., 148 U. S. 80. These cases hold that until the question of title to an unconfirmed grant has been settled by Congress or the tribunal established by it for that purpose, it can not be contested in the ordinary courts of justice.

For the reasons above stated, we are led to the conclusion that the ruling of the Court below in sustaining the demurrer to the second amended bill of complaint and dismissing the suit was correct, and the decree of the court is, therefore, affirmed.

Mills, C. J., and McFie, J. concur; Crumpacker, J., having heard the case below, and Leland, J., being absent, did not participate in this decision.